[Civ. No. 2052. Fourth Appellate District.—November 16, 1938.]

PACIFIC INDEMNITY COMPANY (a Corporation) et al., Appellants, v. CALIFORNIA ELECTRIC WORKS, LTD. (a Corporation), et al., Respondents.

Wright, Monroe, Thomas & Glenn and Wright, Monroe & Harden for Appellants.

Harvey H. Atherton and Dempster McKee, for Respondents.

WARMER, J., *pro tem.*—There is little dispute as to the facts here involved and, so far as here necessary, they are as follows: On May 10, 1935, the Standard Oil Company of California was engaged in the construction of a building and exhibit in the city of San Diego which was to be part of an exposition to be opened in that city. The building and exhibit were to be of the approximate cost of $30,000. In connection with said construction the Standard Oil Company entered into a series of contracts with the California Electric Works, Ltd., hereinafter referred to as the Electric Works. The total amount involved for both materials furnished and labor performed was about $3,700. The contracts, so far as here material, are as follows:

"You agree that work described herein will be performed by you, and as an independent contractor and not as an employee of Company. You will indemnify and save Company harmless from and against any and all loss, damage, injury, liability, and claims therefor, including claims for injury or death to Company's employees and damage to Company's property and claims of liens of workmen and materialmen, howsoever caused, resulting directly or indirectly from the performance of this agreement; and will obtain and maintain in effect insurance, including workmen's compensation insurance, to protect Company from the above in amounts satisfactory to Company."

On May 27, 1935, C. W. Jacques, an employee of the Electric Works, was injured while engaged in performing certain work called for under the contract. Thereafter Jacques commenced an action in the superior court against the Standard Oil Company and one of its employees, Joseph F. Putnam, to recover damages for the injuries so received.

Putnam was an electrical engineer employed by the Standard Oil Company at the time, whose duties were, in part at least, to assist in the construction of said building and exhibit. Certain issues were joined by the answer of the defendants Standard Oil Company of California and Putnam. A trial was had before a jury which returned a verdict against the defendants and a judgment was entered in the sum of $5,594.-03. This included the sum of $2,033.03 paid by the compensation insurance carrier for the Electric Works, the Great American Indemnity Company, for compensation and medical and hospital fees. After the entry of judgment the Great American Indemnity Company filed a claim of lien and prayed for an allowance of a lien on said judgment in the amount paid for compensation and medical and hospital expenses, viz., $2,033.03. The Standard Oil Company of California and Putnam filed an answer and objection to the allowance of said lien and claim. However, the amount thereof is not in dispute. Theretofore the Pacific Indemnity Company and the Standard Oil Company of California commenced an action in declaratory relief against the California Electric Works, Ltd., Great American Indemnity Company, and C. W. Jacques.

The Pacific Indemnity Company, on the 21st day of May, 1935, issued a policy of insurance indemnifying the Standard Oil Company of California against liability arising out of or in the course of the erection and maintenance of said building and exhibit. The Pacific Indemnity Company paid the sum of $3,714.40 to C. W. Jacques, being the amount of the judgment entered in the action of C. W. Jacques against the Standard Oil Company of California et al., less the $2,033.03 theretofore paid by the Great American Indemnity Company, as hereinbefore stated. A partial release of judgment in the sum of $3,714.40 was executed and filed.

In paragraph V of the complaint in the case of *Pacific Indemnity Co. et al.* v. *California Electric Works, Ltd., et al.*, the plaintiffs allege in substance that the injury for which judgment was recovered proximately resulted from the negligence of one Harold Slauson, another employee of the defendant California Electric Works, Ltd., or in effect, that the injuries were the result of the concurrent or combined negligence of Putnam, employee of the Standard Oil Company of California, and said Slauson; that the negligence of each of said employees was and is imputed to the respective

employers. It is also alleged that the contract between the Standard Oil Company of California and the Electric Works defeated any lien and required the Electric Works to indemnify the Standard Oil Company of California for the sum of money paid to Jacques on account of said judgment; that in the damage action the defendants had been precluded from presenting proof of the aforesaid contract. Demurrers and a motion to strike were filed by the defendants. The demurrers were overruled and the motion to strike, so far as the allegations of concurrent negligence of Jacques' employer was concerned, was granted. Otherwise it was denied. Answers were filed pleading the legal effect of the contract. The issues raised by the petition for allowance of the lien and the issues in the declaratory relief action were consolidated for trial.

The trial court issued an order allowing the lien of petitioner on the judgment for damages in the sum of $2,033.03. In the declaratory relief action it was decreed that the contract between the Standard Oil Company of California and the California Electric Works, Ltd., was not a contract of indemnity to the Standard Oil Company of California, indemnifying it against its negligent acts or the negligent acts of its employee, Putnam.

It is conceded that the Great American Indemnity Company was subrogated to the rights of the insured for the amount paid by it, to wit, $2,033.03, and that it was entitled to a lien upon the aforesaid judgment under the terms of section 26 of the Workmen's Compensation Act (Deering's Gen. Laws, 1931, Act 4749), unless the same is not effective, or the right is changed by the claimed concurrent negligence of the employee of the Electric Works, whose negligence was imputed to the Electric Works, or by the contract between Standard Oil Company and the Electric Works, and further that the Pacific Indemnity Company was subrogated to the rights of the Standard Oil Company of California by virtue of the policy of indemnity issued by it to the Standard Oil Company of California. It is also conceded that Jacques, having had compensation and medical, etc., expenses paid to, or for him in the sum of $2,033.03, and the balance of the judgment entered in his favor against the Standard Oil Company of California et al., that he was simply a nominal defendant and no relief was sought against him. It therefore appears that if the ruling striking the allegations relative

to the negligence of the fellow employee being imputable to the employer was correct, and the construction placed on the contract between the Standard Oil Company of California and the California Electric Works, Ltd., was proper, then the judgment must be affirmed.

Appellant contends to hold the defense of contributory negligence of the employer is not available to the negligent third party against whom a judgment was rendered, for the purpose of defeating a lien thereon to the amount of the compensation, etc., paid, amounts to contribution between joint tort-feasors to the extent of the lien, and would permit them to save themselves whole, notwithstanding the existence of the proximate, concurrent negligence of the employee. The question thus presented is not without difficulty of solution.

The same argument might be advanced by any joint tort-feasor against whom judgment had been secured when contribution was denied against other joint tort-feasors. There is no right of contribution between joint tort-feasors. Such is the rule adopted by the courts of this state, which is supported by the great weight of authority. (See 6 Cal. Jur., p. 512.) This rule has been held to apply to the indemnitor of one joint tort-feasor against the other joint tort-feasors (*Smith* v. *Fall River J. U. High School Dist.*, 1 Cal. (2d) 331 [34 Pac. (2d) 994], and cases there cited).

The fact that contributory negligence is permitted as a bar to recovery in any action for negligence is too well established in this state to admit of any doubt. However, such rule does not solve the question here presented. If the question here was simply, can the Standard Oil Company recover against the alleged joint tort-feasor upon proof that the alleged joint tort-feasor was in fact a joint tort-feasor, then, obviously, the answer would be found in the hereinbefore stated rules of noncontribution. But here appellant seeks to show that a different rule must apply because, under the Workmen's Compensation Act, the injured party was in part compensated for his injury by the payment made to or for him, for and on behalf of the employer, by an insurance carrier for the employer, who now seeks a lien on the judgment entered in favor of the employee and against the Standard Oil Company, said judgment being one for personal injuries.

The burden of responsibility for negligence under the facts in this case, if we strike therefrom all consideration of the

Workmen's Compensation Act and results flowing therefrom, would concededly be upon the Standard Oil Company and its insurance carrier, Pacific Indemnity Company. Hence, the solution of the question must be found in the determination of whether or not the Workmen's Compensation Act, and the payment of certain sums thereunder, operate to relieve the Standard Oil Company and its insurance carrier of a portion of its adjudicated responsibility.

It is apparent that by the passage of the Workmen's Compensation Act the legislature intended and did change the whole scheme of the legal responsibility of those persons or corporations falling within its provisions, and as part thereof the employer, who falls within its provisions, became liable for compensation and for medical and hospital care, etc., to employees who were injured while in the performance of services for the employer and such responsibility was not dependent upon any act of negligence. Hence, under the facts here admitted and pleaded, the payment by the insurance carrier of $2,033.03 to the employee was not dependent upon any act of negligence on the part of said employer, but solely on account of the responsibility fixed by the statute, and there is no claim to the contrary.

We must then look to the fact that the Electric Works was alleged to have been negligent, and that such negligence proximately contributed to the injury, with the Standard Oil Company's negligence adjudicated to have been the proximate cause of the injury, to determine whether or not the Standard Oil Company of California can be relieved of a portion of its responsibility.

It is admitted that while the judgment ran in favor of the employee, Jacques, that as to the sum of $2,033.03 that had been paid as compensation, etc., he was a statutory trustee for his employer and its insurance carrier. Yet, had it not been for the Workmen's Compensation Act, every item included therein would have been a proper item of recovery against the Standard Oil Company. Hence, in the final analysis, the statutory compensation payments made by the Electric Works' insurance carrier were for the benefit of the injured employee. Of course, if there had been no statutory responsibility placed upon the Electric Works or its insurance carrier to make such payments, but it had made them nevertheless, then he or it could not recover therefor. Or, assuming

further that the Standard Oil Company, without admitting any responsibility, had made the payments, then he or it could not recover therefor. If the negligent third party is to be relieved of any of its otherwise plain responsibility for its tortious act by any act of the legislature, such intention of the legislature must be declared in language that is plain, certain and unequivocal.

In section 26 of the Workmen's Compensation Act, it is stated that "If the employee joins in or prosecutes such suit (against a third party) either the evidence of the amount of disability indemnity or death benefit paid or to be paid by the employer or the evidence of loss of earning capacity by the employee shall be admissible, but not both, but proof of all other items of damage to either said employer and employee proximately resulting from such injury or death shall be admissible and shall be deemed part of the damages. The court shall first apply out of the entire amount of any judgment for any damages recovered by the employee a sufficient amount to reimburse the employer for the amount of his expenditures for compensation . . . the court shall, on application of the employer, allow as a first lien against the entire amount of any judgment for any damages recovered by the employee the amount of the employer's expenditures for compensation," etc.

Appellants earnestly urge that the insurance carrier for the employer is subrogated to the rights of the insured's employer, and that while the third party, who is the judgment debtor herein, could not defend against the cause stated by the injured employee because of the alleged negligence of the employer or its insurance carrier yet, when the insurance carrier or the employer claims the statutory lien upon the judgment, the purpose of which is to give recoupment to the insurance carrier or employer for payments under the terms of the compensation act, then not only must the employer or its insurance carrier show payment under the act, but must also defend against negligence on the part of the employer, irrespective of its contract with the employer to make payments without any test of the right under any rule applicable to negligence, for which payment the insurance carrier is given a statutory recoupment lien upon the judgment in favor of the employee against a negligent third person, because the appellants claim under section 26 of the Workmen's Compensation Act, the

right of subrogation of the insurance carrier is coextensive with the right of the employer, and that the employer could not recover the amount paid unless free from fault itself. Rights are therein given and the answer must be found in section 26 of Act 4749, *supra,* if at all. The right of an injured employee to maintain an action against a negligent third party is reserved to him by the very terms of section 26 of the act. It was not intended to limit the right thus reserved except in the following manner as in said act provided: ''If the employee joins in or prosecutes such suit . . . either the evidence of the amount of disability indemnity . . . or the evidence of loss of earning capacity by the employee shall be admissible, but not both.'' This rule simply gives to the employee the option, in lieu of proof of loss of earning capacity, medical and hospital charges, etc., for special damages as provided for in the general rule applied in negligence cases, to offer certain indemnity payments made or to be made, which would in nowise change the liability of a third party who is guilty of negligence. In other words, the injured party may adopt a determined amount and submit the same as evidence in support of his claim of damages instead of letting the court or jury fix the sum to be allowed for loss of earnings, medical and hospital, etc., charges.

The next clause of the act directs the court, where the employer is a party to the suit, as to the manner of application of the judgment and provides a sufficient amount to reimburse the employer for his expenditures. This statutory mandate to the court is in nowise made dependent in any way upon a finding that the employer is free from concurrent negligence proximately causing or contributing to the injury.

The next clause of the act provides for the procedure when the employer is not a party to the suit, and for the allowance of a lien upon the judgment for compensation paid. It further provides for an order of allowance of lien, if any be made prior to the payment of the judgment. Again it nowhere appears that the lien is dependent upon the employer being free from any negligence. The rule permitting the introduction in evidence of the amount of compensation, etc., paid, was an addition to the statute made after the decision in the case of *Milosevich* v. *Pacific Elec. Ry. Co.,* 68 Cal. App. 662 [230 Pac. 15]. It therefore appears to us that the legislature

never intended to make the lien thus given dependent upon the proof by the lien claimant that the employer was free from negligence or to relieve the third person wrongdoer of any of the responsibility resting upon him. In fact, nowhere does there appear any language in the act indicating that the third party wrongdoer can question the allocation of the judgment between the injured employee and his employer by the court.

What right is the injured employee's employer subrogated to under the facts in this case? The employee was entitled to recover all his damages from the negligent third person at all times until compensation payments were made by his employer or its insurance carrier under the mandate of the statute, and from the moment he received that compensation, etc., the statute placed him in the position of statutory trustee for his employer to the extent of the compensation, etc., paid. Any recovery by him and the whole thereof was subject to a lien in favor of the employer or his insurance carrier. Hence it seems apparent that in practical effect the employer or insurance carrier was subrogated to his right of payment under the judgment to the extent of their payments of compensation, etc., to him or in his behalf, and that such right of the employer or its insurance carrier is evidenced by a lien and the judgment debtor cannot challenge such lien.

On the question of contributory negligence, we perceive no difference in principle in denying to the Standard Oil Company the right to plead and prove concurrent negligence on the part of the Electric Works, so as to defeat or satisfy their claim of lien, than to hold that the Standard Oil Company, an adjudicated wrongdoer, might maintain an action against the California Electric Works, Ltd., for an amount of money paid by it or its insurance carrier to the plaintiff and included in the judgment in this action, in the sum of $2,033.03, or to grant them contribution between joint tort-feasors. The best that can be said, however presented, is that it would relieve a wrongdoer of a just, legal responsibility, fully recognized, where there is no right of contribution. If the law would permit the Standard Oil Company to avoid payment of part of the judgment because someone else did wrong, then it is escaping responsibility to the extent that the other wrongdoer was compelled to assume liability for which the Standard Oil Company was responsible. (See *General Box*

*Co.* v. *Missouri Utilities Co.*, 331 Mo. 845 [55 S. W. (2d) 442] ; *Clark* v. *Chicago M., St. P. & P. R. Co.*, 214 Wis. 295 [252 N. W. 685] ; *Otis Elevator Co.* v. *Miller & Paine*, 240 Fed. 376.) While some states, under different statutes, and some under kindred statutes have permitted the plea of contributory negligence of the employer, in effect, to defeat the action of an employer (*Brown* v. *Southern Ry. Co.*, 204 N. C. 668 [169 S. E. 419] ; *Thornton Bros. Co.* v. *Reese et al.*, 188 Minn. 5 [246 N. W. 527] ), we feel that the sounder reasoning supports the rule that contributory negligence of an employer cannot constitute a defense to the lien.

There is no provision anywhere that the lien thus created is subject to any rule that the employer, in order to be entitled to the allowance thereof, shall be free from any negligence or fault proximately causing or contributing to the injury. It is true that the section, so far as here material, once read: "If the employee joins in or prosecutes such suit, (against a third party) evidence of the amount of disability indemnity or death benefit paid by the employer shall not be admissible. . . . " When the section so read, the court in *Milosevich* v. *Pacific Elec. Ry. Co.*, 68 Cal. App. 662, 668 [230 Pac. 15], said in part: "From this provision of the act it is evident that it was the intention of the legislature to provide that the action between the employee and the third person, . . . is to be determined without any reference to the amount paid to the employee by the employer or the amount for which the latter might become liable for the injury sustained by the employee . . . The consequences, therefore, of complying with this provision of the act would be to make the defendant in such an action, if liable at all, liable for the full amount of the damages sustained by the employee. To hold that in such an action the defendant is liable for the full amount of the damages sustained by the employee, irrespective of the contributory negligence of the employer, is casting no burden upon the negligent third person greater than that borne by him prior to the enactment of the statute." And the court held that the defendant was precluded from interposing as a defense in such action, the contributory negligence of the employer. (See *Otis Elevator Co.* v. *Miller & Paine, supra; Fidelity & Casualty Co.* v. *Cedar Valley Elec. Co.*, 187 Iowa, 1014 [174 N. W. 709].)

Under the whole scheme of the Workmen's Compensation Act, the payments by the employer or its insurance carrier are for the benefit of the employee and those making the payments thereunder are subrogated to the rights of the employee. When he brings suit on a claim he can accomplish this by way of a lien upon the judgment entered in such suit. Nowhere in said act do we find any language that can be interpreted to relieve the negligent third party of any portion of the responsibility cast upon it as a result of its negligent acts. Manifestly, making certain facts admissible in said action cannot have that effect unless such result is so specifically declared. The Pacific Indemnity Company could be in no better position than its insured, Standard Oil Company of California, to whose rights it was subrogated.

We find no error in striking from the petition or complaint the allegations which attempt to raise the issue of concurrent negligent acts on the part of the employees of the California Electric Works, Ltd., nor in sustaining the objection to the offer of proof respecting the same, as they constituted no defense to said claim of lien.

Appellants next contend that even though they cannot be relieved from the lien because of the concurrent negligence of the employer, nevertheless the order of allowance of lien must be reversed because of the contract hereinbefore set out; that the contract is plain, certain and unambiguous and is a contract made by the California Electric Works, Ltd., to indemnify the defendant, Standard Oil Company of California; and that Electric Works' insurance carrier, Great American Indemnity Company, being subrogated to the insured's rights, is bound thereby; that the court erred in holding said contract to be ambiguous and in admitting evidence in explanation thereof to assist in its construction.

The language to which appellants specifically refer is as follows: "You will indemnify and save company harmless from and against any and all loss, damage, injury, liability . . . howsoever caused."

Respondents claim that the contract cannot be construed to indemnify the Standard Oil Company against its own negligence, unless the very language used compels such construction. Is the contract ambiguous, so as to properly admit oral testimony to explain its meaning? Section 1856 of the Code of Civil Procedure provides that "When the terms of

an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties . . . no evidence of the terms of the agreement other than the contents of the writing, except . . . '' (Here follow certain exceptions which are not here pertinent.) But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates as defined in section 1860, or to explain an *extrinsic* ambiguity. Section 1857 of the same code provides that ''The language of a writing is to be interpreted according to the meaning it bears in the place of its execution . . . '' and section 1860 says: ''For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.'' Section 1643 of the Civil Code contains the following: ''A contract must receive such an interpretation as will make it . . . reasonable . . . if it can be done without violating the intention of the parties.'' Section 1647 of the same code further provides that ''A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.''

These sections of the code simply codify the common rule and it is not thereby intended to add to or take from the contract as written but simply to show what the parties meant by what they said (6 Cal. Jur., p. 298; *United Iron Works* v. *Outer Harbor Dock & Wharf Co.*, 168 Cal. 81 [141 Pac. 917]; *Palma* v. *Leslie*, 6 Cal. App. (2d) 702 [45 Pac. (2d) 391]; *First Nat. Bank* v. *Bowers*, 141 Cal. 253 [74 Pac. 856]).

It will be noted that the qualifying clause to the rule stated in section 1856 of the Code of Civil Procedure says: '' . . . this section does not exclude other evidence . . . to explain an extrinsic ambiguity . . . '' Palpably, other evidence means other than the written contract itself. The question therefore is whether there is any extrinsic ambiguity present in the contract in the case at bar. The language used in the contract would seem to be sufficiently broad to indemnify the Standard Oil Company against its own negligence if there exists no extrinsic ambiguity therein. ■ The statutory use of the words ''extrinsic ambiguity'' in section 1856 of the Code of Civil Procedure we understand to have the same

meaning as latent ambiguity. A latent ambiguity is an uncertainty which arises, not by the terms of the instrument itself, but is created by some collateral matter not appearing in the instrument. (*Harney* v. *Wirtz*, 30 N. D. 292 [152 N. W. 803, 807].)

"When the intention of the party is clearly expressed, and a doubt exists, not as to the intention, but as to the object to which the intention applies, it is, in the same language, called a latent ambiguity." (*Breckenridge* v. *Duncan*, 9 Ky. 50 [12 Am. Dec. 359].) For further citations discussing latent and patent ambiguity see *Harney* v. *Wirtz, supra;* Words and Phrases, Third Series, vol. 4, p. 772; Words and Phrases, Third Series, vol. 5, p. 878. In *Nolan* v. *Nolan*, 155 Cal. 476 [101 Pac. 520, 132 Am. St. Rep. 99, 17 Ann. Cas. 1056], the court said:

"The question as to the intent of the plaintiff in placing the indorsement upon the note was proper and permissible. In principle it is like the rule permitting the introduction of parol evidence to show the true consideration of a written instrument. It did not vary the terms of the writing, for those terms did not express an absolute transfer. It was merely evidence that the transfer was made conditionally and that the plaintiff retained the beneficial ownership of the contract. If such evidence were not admissible, then it must follow that whenever an assignment is made for purposes of collection, the assignor's lips are sealed and the assignee, who under such circumstances is but a trustee, could never be held accountable for the trust property." (Nichols, Applied Evidence, vol. 4, p. 3441, No. 8.) The rule, therefore, is that if there is any reasonable room for doubt as to what the contract means or as to what the exact words thereof apply to, then parol evidence is properly admitted. ■ In the instant case we think there is ample room for doubt as to whether or not the contract was meant to apply to the indemnity of the Standard Oil Company against its own wrong.

The industry of counsel has apparently brought them to definite conclusions directly opposed to each other, and the trial court arrived at the conclusion that the rule admitting evidence other than the contract to explain the intention of the parties to the contract was applicable. In arriving at this conclusion we must remember the general rule that "Where a person is not primarily responsible for the act

or wrong which causes the injury, there is no liability on his part to indemnify the one who has paid the damages. Thus a person is not entitled to indemnity for payments made by him on a judgment against him for injuries to a third person, where it is apparent that the judgment was based on his own negligence or wrong or that of his employees." (31 Cor. Jur., p. 450.) There can be no contention here, independent of the quoted provisions of the indemnity contract, that the California Electric Works, Ltd., was under any legal duty to indemnify the Standard Oil Company. To so hold, the language of the contract must be of such a nature as to compel that interpretation, and to accomplish such a result the language used must be clear and explicit. (14 R. C. L., p. 47.) In *Murray* v. *Texas Co.*, 172 S. C. 399 [174 S. E. 231], the court said:

"We think the trial judge properly refused to grant the motion for a directed verdict on this ground. As stated by him, the provision of a contract relieving one of the parties thereto from liability for his or its own negligence should be clear and explicit. While it is true that the language used in the quoted provision of the contract before us, that the agent shall hold the company 'harmless from all claims, suits, and liabilities of every character whatsoever and howsoever arising from the existence or use of the equipment at said station,' is broad and comprehensive, it is, as stated by the court below, provocative of some doubt. The defendant itself wrote the provision into the contract for its own benefit. It could have plainly stated, if such was the understanding of the parties, that the plaintiff agreed to relieve it in the matter from all liability for its own negligence. As it did not do so, we resolve all doubt, as we should, in favor of the plaintiff, and hold that it was not the intent of the parties to give to the contract as written the effect claimed by the company." (See, also, *Washington & Berkeley Bridge Co.* v. *Pennsylvania Steel Co.*, 215 Fed. 32; *Doughnut Mach. Corp.* v. *Bibbey*, 65 Fed. (2d) 634; *Gross* v. *General Investment Co.*, 194 Minn. 23 [259 N W. 557].) To add to the list of citations would add nothing to the force of the principle discussed. On the other hand, counsel have cited a number of cases tending to establish the opposite view. (See *Kansas City etc. Ry. Co.* v. *Southern Ry. News Co.*, 151 Mo. 373 [52 S. W. 205, 74 Am. St. Rep. 545, 45 L. R. A. 380]; *Long Island R. Co.* v. *American*

*Bridge Co.,* 175 App. Div. 170 [161 N. Y. Supp. 543]; *Cacey v. Virginian Ry. Co.,* 85 Fed. (2d) 976); also many more which it would serve no useful purpose to cite. We think there can be no doubt that similar questions to the one here presented have resulted in different conclusions by different courts. In California, so far as we are aware, the question has not been directly passed upon.

If we were to assume that ''A'', as owner, was constructing a building and installing equipment therein at a total cost of $100,000 and ''B'', an electrical contractor, was doing a small part of the work at a total cost of $100, under such a contract as the one here involved, containing the exact indemnity provision, and an injury to an employee of ''B'' on account of the negligence of ''A's'' employee resulted in a judgment against ''A'' in the sum of $10,000, to hold that the court was without power to place itself in the position of the parties as nearly as possible by admitting oral evidence to explain the contract, or that the contract was prepared by ''A'' or that nothing was said concerning the indemnity of ''A'' against his own negligence, etc., would be tantamount to compelling an unreasonable interpretation that would almost, if not altogether, work a fraud. We find no error in the admission of evidence to explain what the parties intended by what they said in the contract.

As we understand the record, the appellants have no complaint as to the finding of the trial court herein, if it was proper to admit evidence other than the contract itself. That is to say, when the evidence was admitted, it was legally susceptible of the interpretation placed on it by the learned trial judge.

Appellants urge that under section 26 of the Workmen's Compensation Act it was the duty of respondent Jacques to give certain notice of the action commenced by him against the Standard Oil Company et al.; that notice was not given; and that the trial court's denial of a motion for continuance made by the Standard Oil Company was error. Such contention is disposed of adversely to the appellant in the case of *Forrest* v. *Fink,* 71 Cal. App. 34 [234 Pac. 860]. No prejudice to appellants appearing in the record, our conclusions on the basic question here presented makes it unnecessary for us to determine any of the other questions presented. We conclude that the allegation charging contribu-

tory, concurrent negligence to the California Electric Works, Ltd., was properly stricken, as it was no defense to the claim for allowance of a lien on the judgment as provided for by the Workmen's Compensation Act. The Standard Oil Company was not entitled to be released from its legal responsibility as a tort-feasor, as expressed in the judgment against it in favor of the injured employee of another, by reason of the fact that the employer of Jacques or its insurance carrier had paid compensation to the employee under the statutory mandate of the Workmen's Compensation Act. Contributory concurrent negligence of an employer is no defense against the allowance of a lien upon a judgment against a negligent third party. The Standard Oil Company had no interest as to whom the judgment was payable or as to who might have a statutory lien thereon, except to have a valid satisfaction thereof upon the same being paid. The contract in question is not one of indemnity for the Standard Oil Company against its own negligence.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1939.