[Civ. No. 20307. First Dist., Div. Three. Dec. 26, 1962.]

ROSENDAHL CORPORATION, Plaintiff and Respondent, v. H. K. FERGUSON COMPANY, Defendant and Appellant.

Bronson, Bronson & McKinnon and Thomas B. Swartz for Defendant and Appellant.

Leonard A. Worthington and Worthington, Fields & Worthington for Plaintiff and Respondent.

SALSMAN, J.—Rosendahl Corporation, hereafter referred to as plaintiff, brought this action against the H. K. Ferguson Company, a corporation, hereafter referred to as defendant, and obtained a judgment based upon a written indemnity agreement. Defendant appeals.

In 1954 the defendant was engaged as a general contractor in the construction of a building in Richmond. The job involved the excavation of a basement and the construction of reinforced concrete walls. Both operations required the use of mobile cranes.

The plaintiff is a commercial leasing company, and leased to defendant a certain crane to be used by the defendant in connection with the pouring of concrete for the walls of the building being constructed. Employees of both parties conferred about hourly rental rates, and the terms and conditions under which various kinds of equipment could be leased, and they discussed the fact that plaintiff's rental rates, at least as to some equipment, did not include a charge for insurance. The crane leased by plaintiff to defendant was leased on a "fully operated" basis, that is it was accompanied by an operator and an oiler, both employees of plaintiff, but who acted under the direction and control of the defendant in the performance of the work for which the crane was leased. The oiler was given a book of forms entitled "Crane Lease Agreement," and at the end of each day's operations it was his duty to fill out the Crane Lease Agreement for that day, in triplicate, describing the equipment, its place of operation, and hours worked, together with other relative data called for by the form. The agreement was then presented to an employee of defendant, who confirmed it by signature and retained a copy. The Crane Lease Agreement contained the following indemnity provision: "The Lessee expressly agrees

to indemnify and save Lessor harmless from and against all costs, losses and claims for death or injury to persons, and loss, damage or injury to property including leased equipment caused or resulting, directly or indirectly, from the work covered by this order, or done by said equipment, it being expressly agreed that the leased equipment and the employees furnished therewith is under the exclusive jurisdiction, control and supervision of the Lessee.'' The crane leased by defendant was used without incident on nine different dates, and at the end of each day's use a form Crane Lease Agreement was prepared by plaintiff and signed by defendant. On the tenth day of the crane's operation, however, while defendant was using the crane to pour concrete, the cement bucket struck one Phillips, an employee of defendant. The lease agreement for this day was signed by defendant on the next working day. Phillips was knocked off the top of a wall and sustained serious injuries. Phillips filed suit against plaintiff, and plaintiff tendered the defense of that action to defendant pursuant to the indemnity provisions contained in the Crane Lease Agreement. Defendant refused to defend. Plaintiff herein then stipulated in open court to judgment in favor of Phillips in the sum of $12,500, and by this indemnity action seeks to transfer the burden of this judgment to defendant.

The defendant contends there was in fact no indemnity agreement entered into by the parties; that even if such an agreement did exist it could not operate to indemnify plaintiff from the consequences of its own active negligence.

 The evidence supports the trial court's finding that the indemnity and hold harmless clause contained in the Crane Lease Agreement was a binding contract and was intended by the parties to be an express condition to the leasing of the crane to defendant. The Crane Lease Agreement consists of a single sheet of paper, with printing on one side only. The indemnity provisions appear at the bottom of the page and are clearly evident upon a casual examination of the document. The defendant knew that such an indemnity clause was contained in the Crane Lease Agreement, and signed nine separate forms containing these provisions prior to the injury to Phillips. Although defendant contended at trial that he regarded these forms as a mere record of the time the crane was used, the court was not bound to accept this explanation or to place such an interpretation on the document. Defendant had leased equipment from plaintiff on

other occasions and they had discussed the fact that plaintiff's rental rates were based in part on the lessee's obtaining its own insurance. Defendant never at any time made any objection to the presence of the indemnity provisions in the forms which it signed at the end of each day's operations. Thus the defendant's conduct clearly established its acceptance of the indemnity provisions of the contract, and obligated it to the burdens imposed therein. In *Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128, 133 [48 P.2d 13], the court said: ''But it is now a settled principle of the law of contract that the undisclosed intentions of the parties are, in the absence of mistake, fraud, etc., immaterial; and that the outward manifestation or expression of assent is controlling. This is the 'objective' standard, established by the modern decisions and approved by authoritative writers. (See *Zurich Gen. Acc. etc. Co.* v. *Industrial Acc. Com.,* 132 Cal.App. 101 [22 P.2d 572]; *McConnell* v. *Lamontagne,* 82 N.H. 423 [134 A. 718]; 1 Williston, Contracts, § 21, p. 21; 4 Wigmore, Evidence, 2d ed., p. 191; Restatement, Contracts, § 71.)'' If defendant did not intend to be bound by the indemnity provisions of the Crane Lease Agreement it was its duty under the circumstances to say so, and its failure to voice any objection was properly construed by the trial court as an acceptance on defendant's part of the terms and conditions of the indemnity agreement. (*Wood* v. *Gunther,* 89 Cal.App.2d 718, 729-731 [201 P.2d 874].)

The defendant further contends that plaintiff's active negligence was decided in the Phillips case and hence the judgment entered in that action operates as a collateral estoppel against plaintiff, and prevents it from asserting any claim against defendant under the indemnity agreement.

In the Phillips case the plaintiff herein stipulated to the judgment after defendant refused to defend the action. The record before us does not disclose what specific negligent act or omission on the part of plaintiff herein justified the Phillips judgment, but in the trial of this indemnity action the court found that plaintiff was in fact not negligent at all, and that the injuries to Phillips were caused solely by the active negligence of the defendant. Nevertheless, even if it be assumed, as defendant so strongly insists, that plaintiff was in some way actively negligent, and that plaintiff's active negligence resulted in the Phillips judgment, this would not necessarily preclude plaintiff from a recovery under the indemnity agreement if the parties intended their agreement to allow such recovery. Here the trial court found that ''the

injury to Phillips was the type of circumstance and result against which the Plaintiff sought to be protected and which was intended by the parties to be covered by the Indemnity and Hold Harmless Clause in their contract for the lease of said equipment and cranes.'' ▮▮▮ The question therefore is one of interpretation of the contract between the parties. In *Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.,* 54 Cal.2d 445, 447-448 [6 Cal.Rptr. 284, 353 P.2d 924], the court said: ''The question in the present case, as in *Vinnell Co.* v. *Pacific Elec. Ry. Co.,* 52 Cal.2d 411 [340 P.2d 604], is whether such an indemnity clause operates to exculpate the indemnitee from the consequences of its own breach of duty where the clause does not expressly state that the damage so caused is intended to be included in the coverage of the clause. The question is one of interpretation of contracts. If it can be determined that the parties intended by their agreement to protect the indemnitee against claims of damage caused by any or even all types of negligent conduct on its part, such an agreement would effectively accomplish that purpose. (*City of Oakland* v. *Oakland etc. School District,* 141 Cal.App.2d 733, 738 [297 P.2d 752] ; anno., 175 A.L.R. 8, 144-149.) '' On sufficient evidence a portion of which has been recited in the statement of facts herein, the trial court found the parties intended that plaintiff be indemnified for a loss such as occurred herein and properly gave effect in its judgment to the intention of the parties.

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied January 21, 1963, and appellant's petition for a hearing by the Supreme Court was denied February 20, 1963.