JACK F. DAHLMAN, D/B/A DAHLMAN TRANSFER BUSI-
NESS, PLAINTIFF AND RESPONDENT AND CROSS APPELLANT, *v.*
GREAT NORTHERN RAILWAY COMPANY, A CORPORA-
TION, DEFENDANT AND APPELLANT AND CROSS RESPONDENT.

No. 11781.
Submitted Sept. 11, 1970.
Decided Dec. 17, 1970.
Rehearing Denied Feb. 11, 1971.
480 P.2d 177

MR. JUSTICE DALY, delivered the Opinion of the Court.

This is a declaratory judgment action between a Butte transfer business and a railroad to determine their respective rights to indemnity under applicable contract provisions between them. From a judgment of the district court of Silver Bow County holding that neither party was entitled to indemnity from the other, an appeal and crossappeal by the parties has been taken.

Plaintiff in the declaratory judgment action is Jack F. Dahlman doing business as Dahlman Transfer Business, hereafter called Dahlman. Defendant is the Great Northern Railway Company, hereafter called the railroad. Dahlman and the railroad entered into two contracts on December 1, 1965, relating to certain transportation business which Dahlman would perform for the railroad. Both contracts were in effect on February 7, 1968 when Everett Salvail, an employee of the railroad, was injured in a fall from the rear end of a trailer owned by the railroad and being moved by a tractor belonging to Dahlman which was then being driven by a Dahlman employee, Frank Sikonia.

As a result of this accident Salvail filed a personal injury suit against Dahlman and the railroad. Salvail later voluntarily dismissed Dahlman as a party defendant and went to trial against the railroad as sole defendant. A jury verdict and judgment was entered in favor of Salvail against the

railroad which was on appeal to this Court at the time of trial and entry of judgment in the instant declaratory judgment action. Although the appeal in the Salvail case has since been decided by this Court, Salvail v. Great Northern Railway Company, 156 Mont. 12, 473 P.2d 549, this fact is of no consequence in determining the right of indemnity in the present declaratory judgment action. The dollar amount of indemnity is not involved in the present appeal, being subject to later determination by the district court in supplementary proceedings under section 93-8908, R.C.M. 1947.

The two contracts between Dahlman and the railroad heretofore mentioned can be identified as the TOFC (trailers on flat cars) contract and the LCL (less than carload) contract. The indemnity provisions in the two contracts differ. The TOFC contract provides:

"5. As between the parties, each assumes and agrees to indemnify and hold harmless the other against liability for injury to or death of its own officers, agents, and employees *engaged in the operations covered by this contract,* however such injury or death may occur or be caused." (Emphasis supplied.)

The LCL contract contained this indemnity provision:

"The Contractor (Dahlman) covenants and agrees to protect, indemnify and hold harmless the Railroad Company from and against any and all loss, damage, cost and expense, including attorneys' fees, that may be suffered or incurred by the Railroad Company, or by any person or persons, firm, association or corporation, resulting from:

"(a) Injury to or death of persons * * * caused by, or resulting in any manner from, any acts or omissions, negligent or otherwise, of Contractor, or any of Contractor's agents, servants or employes, *in performing or failing to per-*

*form any of the services or duties on the part of the Contractor to be performed hereunder".* (Emphasis supplied, parenthetical identification added).

At the trial the underlying controversy concerned whether the TOFC contract or the LCL contract was controlling. The district court entered findings of fact and conclusions of law to the effect that the services being performed by Dahlman at the time of Salvail's injury were being performed under the LCL contract whose terms were applicable and controlling. A declaratory judgment was entered that Dahlman was obligated to pay the amount of Salvail's judgment against the railroad and all costs incurred by the railroad by reason of Salvail's injury including medical expenses and attorney's fees.

Thereafter, in response to Dahlman's exceptions to these findings of fact and conclusions of law and his motion to amend the declaratory judgment, the district court entered an additional finding that the railroad had not as yet suffered any detriment or out-of-pocket loss and therefore Dahlman was in no manner liable to the railroad. The declaratory judgment was amended to provide that neither Dahlman nor the railroad had shown any basis on which either could have recovery against the other and all declaratory relief was denied to both. The railroad then appealed from this final judgment and Dahlman crossappealed.

All issues involved in this appeal are encompassed in two basic questions: (1) Is the TOFC contract, the LCL contract, or both applicable and controlling? (2) What are the indemnity rights and liabilities of the parties thereunder?

Dahlman's basic contention is that the TOFC and LCL contracts must be construed together as one agreement, and that the TOFC contract provision that each will hold the other harmless against liability for injuries to its own employees pervades such entire agreement denying indemnity to the railroad irrespective of whether Dahlman's services were being

performed under the TOFC or LCL contract at the time of Salvail's injury. Alternatively, Dahlman argues that if the two contracts are not construed as one indivisible agreement, the TOFC contract is controlling and its indemnity provisions deny recovery to the railroad for injuries to its own employee. Finally, Dahlman argues, neither contract provides for indemnity to the railroad for injuries occasioned by its own negligence. By way of affirmative relief, Dahlman contends he is entitled to indemnity from the railroad, including his attorney's fees both in Salvail's personal injury action and in the declaratory judgment action.

On the other hand, the railroad's fundamental position is that the LCL contract is the controlling contract and under the indemnity provision therein it is entitled to be held harmless and reimbursed for any judgment finally entered in favor of Salvail, including reasonable medical bills incurred by the railroad and reasonable attorneys' fees for the services of the railroad's attorneys in the Salvail case, irrespective of whether the railroad was negligent or not.

In our view the LCL contract is the controlling and applicable contract because it exclusively applies to any service rendered in the pickup and delivery of less-than-carload freight. The LCL contract specifically provides that it "cancels and supplants any and all other agreements and understandings for trucking between the Railroad Company and the Contractor" covering the transportation of less-than-carload freight. The admissions of Dahlman in pretrial discovery proceedings conclusively show that at the time of Salvail's injury the traffic being handled by Dahlman was less-than-carload freight. It is likewise undisputed that both Dahlman and the railroad treated the service performed by Dahlman at this time as LCL contract service. Dahlman billed the railroad for this service under the LCL contract and the railroad paid Dahlman for this service at the rates provided in the LCL contract. The fact that the railroad makes the deter-

mination whether the freight is a trailer load or whether it is LCL and Dahlman accepts this determination is immaterial as it is the result of the joint action of both parties with no evidence of objection by either.

This irrespective of whether there is one or a dozen other contracts between the parties otherwise covering the services in question, the LCL contract by its explicit and unambiguous language supersedes all other contracts where less-than-carload freight is involved. The parties by their own actions so treated the LCL contract, considering it applicable and controlling.

The remaining question concerns the right of the railroad to indemnity from Dahlman under the LCL contract. As stated by Dahlman, the precise question is whether the indemnity provision therein grants indemnification to the railroad for injuries occasioned by its own negligence.

The indemnity provision in the LCL contract heretofore quoted provides indemnification to the railroad for any detriment it suffers as a result of injury to persons "caused by, or resulting in any manner from, any acts or omissions, negligent or otherwise" of Dahlman's employees in performing any of the services covered by the contract. No reference is contained therein to injuries resulting from acts or omissions of the railroad, its agents or employees. There is no question that Salvail's injury was caused by and resulted from the acts or omissions of Dahlman's employee, Frank Sikonia. The controversy arises because of the dual relationship of Sikonia to the parties to the contract. He was both the employee of Dahlman and the agent of the railroad.

Dahlman contends that there is no right of indemnity in the railroad under the contractual provisions in question because it does not clearly and unequivocally grant indemnification resulting from the railroad's own negligence, citing in support of this principle: Ryan Mercantile Co. v. Great Northern Railway Co., 9 Cir., 294 F.2d 629 (1961); Western

Const. Equipment Co. v. Mosby's Inc., 146 Mont. 313, 406 P.2d 165 (1965); Lesofski v. Ravalli County Electric Cooperative Inc., 151 Mont. 104, 439 P.2d 370 (1968). We apply this principle and find that the railroad is entitled to indemnification under the terms of the LCL contract.

Here the language of the indemnity provision is all-inclusive as indicated by the language "resulting in any manner," "any acts or omissions," and "negligent or otherwise." It is beyond cavil that Salvail's injuries resulted from acts or omissions of Dahlman's employee. This is exactly the situation the indemnity provision was intended to cover by its clear and explicit language. To deny indemnity here because the same acts and omissions by the same individual are chargeable to the railroad to effectuate the legislative policy contained in the Federal Employers' Liability Act as expressed in Sinkler v. Missouri P.R.Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799, is to deny indemnity without regard to the intention of the parties in the instant case. The LCL contract expressly provides that Dahlman is an independent contractor and his employees are his alone and not those of the railroad. Although this provision does not relieve the railroad from chargeability and liability for Sikonia's acts and omissions under the Federal Employers' Liability Act, it is a clear expression of the intent of both Dahlman and the railroad that the acts and omissions of Dahlman employees are subject to indemnification in favor of the railroad.

One of the most compelling arguments against denying indemnification to the railroad on the basis of the imputed negligence of Dahlman's employee is that such construction would render the contractual indemnity provision meaningless under the circumstances of the instant case. Unless the railroad is negligent, Salvail cannot recover and there is nothing to indemnify. It might be argued that if the railroad were not negligent, it would be entitled to indemnification for its costs of defense. But how could any such right of indemnity

occur where any act or omission of Dahlman, its agents or employees is chargeable against and imputed to the railroad? For a similar although not identical case allowing indemnity to the railroad under an identical indemnity provision see Union Pacific Railroad Co. v. Ross Transfer Co., 64 Wash.2d 486, 392 P.2d 450.

The modified findings of fact, conclusions of law and judgment of the district court dated September 17, 1969 are reversed. The original findings of fact and conclusions of law dated August 15, 1969 are reinstated with the exception that findings of fact numbered 6, 7, 8, 9 and 10 therein are ordered stricken and conclusion of law number 2 therein is amended to read as follows:

"That the Great Northern Railway Company has a right of indemnity from Jack F. Dahlman, d/b/a Dahlman Transfer Business, pursuant to the indemnity provisions of the LCL contract contained in 'Exhibit B'."

The declaratory judgment of the district court dated August 21, 1969 is reinstated and the cause remanded to the district court for supplementary proceedings pursuant to section 93-8908, R.C.M.1947, to determine the dollar amount of the indemnity award.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES HASWELL, HARRISON and CASTLES, concur.